IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTIE ALEXANDER,       )<br>                                                  )<br>            Plaintiffs,            )<br>                                                  )<br>v.                                              )<br>                                                  )<br>NORTHSTAR RX, LLC,       )<br>                                                  )<br>            Defendant.          )<br>                                                  )<br>                                                  )<br>                                                  )<br>                                                  )<br>                                                  )<br>                                                  )<br>                                                  )<br>                                                  ) | Case No. _____<br><br>**COMPLAINT AND DEMAND<br>FOR JURY** |

Plaintiff, **MATTIE ALEXANDER**, by and through her attorneys, **ROBERT L. SALIM, APLC**, allege upon information and belief, as follows:

### I.

### **PARTIES**

1. Plaintiff, **MATTIE ALEXANDER**, is a citizen and resident of Winnfield, Louisiana.

2. Defendant, Northstar RX, LLC, is a foreign corporation, with its principal place of business at 4971 Southridge Blvd, Suite 101, Memphis, Tennessee 38141.

3. Defendant is or was, at all material times hereto, in the business of designing, manufacturing and marketing a generic drug known as Allopurinol (hereinafter "the drug").

4. Defendant is in the business of designing, manufacturing, selling and distributing the drug to users in Louisiana and throughout the United States through various retailers, including but not limited to pharmacies.

5. Defendant intended that the drug reach the user or consumer such as Plaintiff, **MATTIE ALEXANDER**, in the condition in which it was originally sold and distributed by

Defendant.

6. Defendant put this product into the stream of commerce without any alteration or modification of the drug by any distributor or retailer.

## II.

## JURISDICTION AND VENUE

7. Both jurisdiction and venue are proper in the Western District of Louisiana. The Defendant conducts or has conducted business activity in Winnfield Parish, Louisiana and the defendant has distributed products throughout Winnfield Parish. Plaintiff purchased and consumed the Defendant's products in the Western District of Louisiana and was injured in said district.

8. Jurisdiction is based on complete diversity between the Plaintiff and the Defendant pursuant to 28 U.S.C. § 1332.

9. Venue is proper as to causes of action against Defendant because:

   a. A substantial part of the cause of action accrued in the State of Louisiana in that Plaintiff received and consumed the Defendant's pharmaceutical products in Winnfield Parish, Louisiana and sustained injury in Winnfield Parish, Louisiana (28 U.S.C. §1391(2)).

   b. Defendant has directed its products into Winnfield Parish, Louisiana.

   c. Defendant has sold its products into Winnfield Parish, Louisiana.

   d. Winnfield Parish sits in the Western District of Louisiana.

10. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## III.

## FACTS

11. Plaintiff brings this action for the purpose of recovering damages for the personal injuries Plaintiff has suffered as a result of ingesting Allopurinol.

12. At all times material, hereto, Defendant was engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising the drug Allopurinol.

13. On or about February 4 2010, Plaintiff, **MATTIE ALEXANDER**, began ingesting Allopurinol.

14. Subsequently, **MATTIE ALEXANDER** was admitted to the emergency room with a severe rash and was subsequently diagnosed with severe Stevens-Johnson-Syndrome (hereinafter "SJS") and/or Toxic Epidermal Necrolysis (hereinafter "TEN") that manifested itself over large areas of **MATTIE ALEXANDER'S** body and was caused by Defendant's Allopurinol.

15. Plaintiff had no knowledge of any unseen potential dangerous defect or condition in the drug at the time **MATTIE ALEXANDER** used it, and certainly no knowledge that it could cause SJS/TEN.

16. Plaintiff used the drug in the manner intended and in accordance with instructions included with the drug by Defendant.

17. The drug was defectively designed by Defendant so as to render it unreasonably dangerous to Plaintiff, **MATTIE ALEXANDER**, and other persons similarly situated, in that:

    a. Defendant failed to adequately test the drug before selling and distributing it;

    b. Defendant failed to adequately and completely report the clinical trials data regarding the drug;

c. A safer alternative design would have prevented or significantly reduced the risk of Plaintiff, **MATTIE ALEXANDER'S** injuries, without substantially impairing the drug's utility;

d. A safer, alternative design was economically and technologically feasible at the time the drug left the control of Defendant by the application of existing or reasonably achievable scientific knowledge;

e. The drug's risk to individuals like **MATTIE ALEXANDER** far outweighed its benefit, particularly considering that there were other drugs on the market, which were safer and equally as effective.

18. As a direct and proximate result of the aforesaid defects, the Plaintiff, **MATTIE ALEXANDER**, sustained serious and permanent injuries, suffered great pain of mind and body, was forced to seek medical attention, will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention, will be forced to spend more money in the future and, further was deprived of carrying out her normal duties and affairs for a long period of time.

19. At all times material hereto, Defendant, **NORTHSTAR RX LLC,** was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities Allopurinol in the state of Louisiana and in interstate commerce.

20. At all relevant times, Defendant was acting by and through their agents, servants and/or employers, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

21. Plaintiff, **MATTIE ALEXANDER**, ingested the Allopurinol.

22. Plaintiff's ingestion of the Allopurinol caused her injuries.

23. Federal law does not permit manufacturers to passively accept the inadequacy of their drug's label as they market and profit from it.

24. At a minimum, a manufacturer should alert the agency to any new safety hazards associated with its product.

25. Defendant in this case, upon information and belief, failed to investigate the accuracy of their drug label.

26. Defendant in this case, upon information and belief, failed to review the medical literature for the drug.

27. Defendant in this case, upon information and belief, failed to report adverse incidents.

## IV.

## LIABILITY

28. Defendant was at all times relevant to this suit, and is now, engaged in the business of designing, manufacturing, testing, marketing, and/or placing in the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Allopurinol at issue in this lawsuit. The Allopurinol placed into the stream of commerce by Defendant reached Plaintiff without substantial change and was ingested as directed. The Allopurinol was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

29. Defendant is believed to be a "manufacturer" under Louisiana Revised Statute 9:2800.53(1).

30. Plaintiff hereby sets forth that the Defendant is liable to Plaintiff under the Louisiana Products Liability Act, La. R.S. 9:2800.54 et seq.:

    a. At the time Allopurinol left the control of the Defendant it was defective and unreasonably dangerous due to a failure to contain adequate warnings or

       instructions, or in the alternative, because the product breached an express warranty or failed to conform to the other expressed factual representations upon which Plaintiff and/or Plaintiff's physician's justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seeks recovery herein;

  b. Allopurinol was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the Defendant, and that such risks clearly outweighed the utility of the product or its therapeutic benefits;

  c. At the time Allopurinol left the control of the Defendant it possessed a dangerous characteristic that may cause damage, and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession of the Defendant. Specifically, although the Defendant were well aware that Allopurinol could potentially cause Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis, and in fact, had significantly greater prevalence and severity of these side effects in children, warnings of such adverse health conditions were either not included on the package insert for these products or they were not adequate to inform consumers. The Defendant failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of Allopurinol.

  d. The Defendant' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicated sufficient information on the dangers and safe use of the product taking into account the characteristics of the product, and/or the ordinary knowledge common to the consumer, such as the Plaintiff.

31. At all times pertinent and material hereto, there existed alternative feasible drugs to provide comparable benefits of Allopurinol to Plaintiff without the attendant risks of Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis.

32. At all times pertinent and material hereto, Defendant knew that Allopurinol was unreasonably dangerous and/or defective as set forth herein.

33. In the alternative, Defendant should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions of Allopurinol, had it reasonably employed then-existing scientific and/or technical knowledge,

reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

34. The Allopurinol manufactured by Defendant is unreasonably dangerous due to an inadequate warning that, at the time the drug left Defendant' control, possessed a characteristic that might cause damage or injury to Plaintiff, and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to prescribing physicians and/or users of the drug.

35. In addition, and in the alternative, the Allopurinol manufactured by Defendant is unreasonably dangerous in design, in that at the time the drug left the Defendant' control, there existed, upon information and belief, an alternative design for the drug that was capable of preventing Plaintiff's injuries, and the likelihood of causing the Plaintiff's injuries and the gravity of that harm outweighed the burden (if any) on Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drug.

36. The Defendant knew or in light of reasonably available scientific knowledge should have known about the danger that caused the injuries for which Plaintiff seeks recovery.

37. A reasonably ordinary consumer who ingested Allopurinol would not readily recognize ingestion of the drug involved substantial dangers.

38. The Plaintiff did not know, nor had reason to know, at the time of her usage of Allopurinol, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

39. Those defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by Defendant or in a non-intended manner that was reasonably foreseeable.

40. Defendant failed to provide adequate warnings based on what it knew or should have known about the adverse effects of Allopurinol.

41. Defendant is therefore liable to Plaintiff for any and all damages arising from Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis, and/or other purchase and/or use of the drug.

## DAMAGES

42. It is believed and alleged that Plaintiff's ingestion and use of Allopurinol caused and/or contributed to her Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis.

43. As a direct and proximate result of the purchase and use of Defendant's Allopurinol and the Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis resulting therefrom, Plaintiff has incurred, and will continue to incur, medical expenses.

44. As a direct and proximate result of the purchase and use of Defendant' Allopurinol, and the Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis resulting therefrom, Plaintiff has suffered, and will continue to suffer, physical pain, mental anguish, emotional distress, disfigurement, disability and loss of enjoyment of life.

45. As a producing and proximate result of the above-described acts and omissions of Defendant, Plaintiff has incurred actual damages in excess of $75,000.00, including but not limited to:

   a. Reasonably and necessary medical expenses incurred in the past;

   b. Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

   c. Conscious physical pain and suffering experienced in the past;

   d. Conscious physical pain and suffering reasonably likely to be experienced in the future;

  e. Mental anguish in the past;

  f. Mental anguish likely to be experienced in the future;

  g. Physical disfigurement in the past;

  h. Physical disfigurement likely to be experienced in the future;

  i. Physical impairment in the past;

  j. Physical impairment likely to be experienced in the future;

  k. Pre and post-judgment interest at the lawful rate;

  l. Such other applicable damages as the Court deems appropriate.

WHEREFORE, Plaintiff prays that after this Complaint is served on Defendant it be deemed good and sufficient, and upon final determination of these causes of action Plaintiff receives a judgment against Defendant as follows:

  a. Actual damages as alleged against Defendant;

  b. Costs of court necessary for filing and preparation of this case for trial;

  c. Prejudgment interest and legal interest on the judgment;

  d. All such other and further relief at law and in equity to which Plaintiff may show herself to be justly entitled.

Plaintiff hereby demands a trial by jury.

           By /s/ P. Ann Trantham
           P. Ann Trantham
           Robert L. Salim Law Office
           1901 Texas Street
           Natchitoches, LA 71457
           Telephone: (800) 491-1817
           Fax: (318) 352-5998
           ATTORNEY FOR PLAINTIFF

           -and-

           Robert L. Salim, Esq.

**ROBERT L. SALIM, APLC**
1901 Texas Street
Natchitoches, LA 71457
Telephone: (318) 352-5999
Fax: (318) 352-5998
ATTORNEY FOR PLAINTIFF